*363 ORDER (Granting Defendant’s Motion for Summary Judgment)
TODD R. MATH A. Associate Judge.
INTRODUCTION
The Court must determine whether to grant the plaintiffs Motion for Summary Judgment. The Court examined the legal arguments proffered by both parties, but rules in favor of the defendant due to the absence of a case or controversy. The plaintiff does not possess standing to maintain the instant suit.
PROCEDURAL HISTORY
The plaintiff, Daniel W. Green, by and through Attorney Tracey L. Schwalbe, initiated the current action by filing a Complaint with the Court on November 3, 2000. Consequently, the Court issued a Summons accompanied by the above-mentioned Complaint on November 3, 2000, and delivered the documents by certified mail to the defendant’s representative, Ho-Chunk Nation Department of Justice (hereinafter DOJ).[1] One Jill Anderson signed for the certified mailing on November 7, 2000, as indicated on the Domestic Return Receipt. The Summans informed the defendant of the right to file an Answer within twenty (20) days of the issuance of the Summons pursuant to HCN R. Civ. P. 5(B). The Summons also cautioned the defendant that a default judgment could result from failure to file within the prescribed time period.
The defendant, by and through DOJ Attorney Elaine H. Smith, timely filed its Answer on November 21,2000. The Court reacted by mailing Notke(s) of Hearing to the parties, informing them of the date, time and location of the Scheduling Conference. The Court convened the Scheduling Conference on. January 10, 2001 at 10:00 a.m. CST, The following parties appeared at the Conference: Attorney Tracey L. Schwalbe, plaintiffs counsel (by telephone), and DOJ Attorney Elaine H. Smith, defendant’s counsel. The Court entered the Scheduling Order the next day, setting forth the applicable timeline of the instant case.
On March 22, 2001, the plaintiff submitted the Plaintiffs Notice of Motion and Motion for Summary Judgment accompanied by the Plaintiffs Brief in Support, of Plaintiffs Motion for Summary Judgment. The plaintiff also submitted his Amended Complaint on the same date. The following day, the parties jointly filed the Proposed Stipulated Facts. Likewise, on March 23, 2001, the defendant submitted the Defendant’s Notice & Motion to Dismiss accompanied by the Brief in Support of Defendant’s Motion to Dismiss. In light of these filings, the Court entered an April 2, 2001 Order (Motion Hearingi, indicating that it would entertain oral arguments on the motions'at an April 11, 2001 Motion Hearing. The plaintiff and defendant filed respective motion responses on April 2, 2001 and April 10, 2001, in accordance with the HCN R. Civ. P. Id., Rule 19(A). In addition, the defendant filed an April 10, 2001 Motion to Strike.[2]
*364 The following parties appeared at the Motion Hearing: Attorney Tracey L. Schwalbe, plaintiff s counsel, and DOJ Attorney Elaine H. Smith, defendant’s counsel. At the Hearing, the Court directed the parties to submit supplemental briefs on or before May 11, 2001, with an optional responsive memorandum from the plaintiff on or before May 25, 2001. Id. at 12, 08:53:12 ODT. Both parties consequently filed supplemental briefs on the deadline. The plaintiff declined the opportunity to respond, but did submit a June 8, 2001 correspondence primarily to object to an untimely June 1, 2001 legislative history filing by the defendant. The Court shall not address the propriety of the late filing in that it does not inform the basis for this judgment.[3]
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Article VII Judiciary
Sec. 5. Jurisdiction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE (adopted Feb. 22, 1997)
Rule 5. Notice of Se rvice of Process.
(B) Summons. The Summons is the official notice to the party informing him/her that he/she is identified as a party to an action or is being sued, that an Answer is due in twenty (20) calendar days (See, HCN R. Civ. P. 6) and that a Default Judgement may be entered against them if they do not file an Answer in the limited time. It shall also include the name and location of the Court, the case number, and the names of the parties. The Summons shall be issued by the Clerk of Court and shall be served with a copy of the filed complaint attached.
Rule 19. Filing and Responding to Motions.
(A) Motion. Motions may be filed by a party with any pleading or at any time after their first pleading has been filed. A copy of all written Motions shall be delivered or mailed to other parties at least five (5) calendar days before the time specified for a hearing on the Motion. A Response to a written Motion must be filed at least one day before the hearing. If no hearing is scheduled, the Response must be filed with the Court and served on the other parties within ten (10) calendar days of the date the Motion was filed. The party filing the Motion must file any Reply within three (3) calendar days.
Rule 27. The Nation as a Party.
(B) Civil Actions. When the Nation is filing a civil suit, a writ of mandamus, or the Nation is named as a party, the Complaint, in the case of an official or employ *365 ee being sued, should indicate whether the official or employee is being sued in his or her individual capacity. Service can be made on the Ho-Chunk Nation Department of Justice and will be considered proper unless otherwise indicated by these rules, successive rules of the Ho-Chunk Nation Court, or Ho-Chunk Nation Law.
Rule 31. Required Disclosures.
(5) judicial notice shall be taken of and required disclosures shall be made of official documents, public documents, documents subject to public inspection, document and materials of non-executive session, governmental minutes and recordings of a governmental body pursuant to the HCN Open Meetings Act of 1996.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE (amended Apr. 13, 2002)
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity which prevented a party from receiving a fair trial or a substantial legal error which affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(C) Motion to Modify. After the time period in which to file a Motion to Amend of a Motion, for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Reissuance of Judgment. Clerical errors in a court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not *366 reasonably have been discovered in time to request a new trial; or (2) fraud, misrepresentation or serious misconduct of another party to the action; or (3) good cause if the requesting party was not personally served in accordance with Rule 5(e)(l)(a)(i) or (ii); did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure, specifically Rides of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the HCN Rules of Appellate Procedure.
FINDINGS OF FACT
The parties stipulated that “no genuine issue as to material fact” exists within the instant case, thereby rendering the matter capable of resolution through summary judgment. HCN R. Civ. P. 55; see also Def.’s Br. in Opp’u to Pl.’s Mot. for Summ. J. (Apr. 10, 2001) at 12-13; Pl.'s Mot. for Stumu. J. (Mar. 22, 2001). The following undisputed facts reflect the mutual understanding of the parties. The Court restates Findings of Fact 1-9 in verbatim form as reported in the March 23, 2001 Proposed Stipulated Farts.
1.Daniel W. Green [Dan Green] is an adult member of the Ho-Chunk Nation [HCN], whose date of birth is March 23, 1996, and who resides at 4115 Bank Drive, La Crosse, Wisconsin 54601.
2. Steven S. Davis was employed by the HCN as the Real Estate manager for the Home Ownership Program [HOP] on May 11, 2000.
3. Steven Davis is no longer employed by the Ho-Chunk Nation. The position of Real Estate Manager is currently vacant.
4. Dan Green became an enrolled member of the HCN on May 30, 1997, HCN ID No. 439A006264.
5. On October 16, 1997, Dan Green’s application for mortgage refinancing assistance was received at the HCN HOP; a true and correct copy of the Application and the HOP Selection Criteria form are attached to this stipulation as Exhibit A.[4]
6. On August 13, 1998, Steven Davis sent a Status Report letter to Dan Green to notify him that the panel review had determined that Mr. Green did not have sufficient priority points to be selected for mortgage refinancing at that time; a true and correct copy of the letter is attached as Exhibit B.[5]
7. On August 18, 1998, the HCN Legislature adopted Resolution 8-18-98B to amend the HOP Manuals, in particular amending the eligibility requirements for receipt of home ownership assistance under the program, to require that “any applicant whose Home Ownership application was not approved prior to July 1, 1998, must have been enrolled for five years prior to the commencement of the fiscal year in which the approval of such applicant’s file is considered”; a true and correct copy of Resolution 8-18-98B is attached to this stipulation as Exhibit C.[6]
*367 8. On or about May JO. 2000, Dan Green asked Steven Davis to provide him with a letter from HOP indicating the bases for the HOP denial of mortgage refinancing for him; Dan Green indicated at that time that he was looking into mortgage refinancing options.
9. Steven Davis sent Dan Green a letter dated May 11, 2000; a true and correct copy of the letter is attached to this stipulation as Exhibit D.[7]
* ⅜ * * * ⅝
Findings of Fact 10-17 represent the following: relevant excerpts from authenticated exhibits, extrapolations on facts not in dispute and references to “documents subject to public inspection.” HCN R. Civ. P. 31(A)(5).
10. The parties received proper notice of the April 11, 2001 Motion Hearing.
11. The Ho-Chunk Nation Department of Housing & Public Works devised a mortgage refinancing selection criteria system, which incorporates a method to award pre-applicants bonus points for each full year an application remains on file. Specifically, “[a]ll pre-applicants will be re-ranked every two years,” and awarded twenty (20) additional priority points to his or her point total. Proposed, Stipulated, Facts, Ex. A (Policy Manual for Phase III of the HCN HOP: Refinancing of Mortgages at 5). If a tie results between members possessing enough points to receive refinancing, “a lottery will be held to determine the order in which applicants will be approved for the program.” Id.
12. The plaintiff garnered thirty (30) priority points on the first bi-annual review of his pre-application. Proposed Stipulated Fads, Ex. B (HCN HOP Status Report). On the August 13, 1998 Status Report, Steven S Davis, Real Estate Manager, noted that “at the present time we have approximately 1325 files. Please be rest assured that we will continue to give your file the priority according to the date it was received by our office.” Id.
13. The Real Estate Manager later informed the plaintiff of the status of his application in a May 11, 2000 correspondence, confirming the suspension of his file. Proposed Stipulated Facts, Ex. D. Steven S. Davis explained that the plaintiff was “accepted as an enrolled member of the Ho-Chunk Nation on May 30, 1997 and will not be eligible to fomally apply to the Home Ownership Program until May 30, 2002.” Id. Mr. Davis continued:
“Once you have reached the minimum enrollment requirement of 5 years, your application to the Home Ownership Program will be accepted. There are criteria standards, which will then apply, and your application will.be ranked based on the established criteria at that time. Currently, the program has in excess of 100 pending applications to the refinance phase of the program. As your file becomes higher in priority according to the criteria established, and as funding becomes available from the Legislature,[8] your file will be approved for refinance. This has the potential to take up to a few years depending on the number of applications and amount of fiscal funding to the program in the refinance line item.”
M (footnote added).
14. The Wisconsin Winnebago Tribe, n/k/a Ho-Chunk Nation, distributed its *368 first per capita shares from gaming revenues on or about April 15, 1993, in the amount of $1,000.00. WWBC Mins. (Mar. 29, 1993) at 1. Approximately 4,700 enrolled tribal members received this distribution. Id, at 3.
15. The Ho-Chunk Nation distributed per capita shares from gaming revenues on or about August 1, 1998, in the amount of $2,070.91. HCN Leg. Mins. (July 7, 1998) at 4. 5,867 enrolled tribal members received this distribution. Id. Over the course of five (5) years, tribal membership expanded by roughly 20%.
16. The Ho-Chunk Nation distributed per capita shares from gaming revenues on or about May 1, 2001, in the amount of $3,000.00. HCN Leg. Mins. (Apr. 4, 2001) at 4. 6,088 enrolled tribal members received this distribution. Id. Over the course of eight (8) years, tribal membership expanded by roughly 23%.
17. As of March 13, 2000, 556 federally recognized Indian tribes were located in the continental United States and Alaska. 67 Fed.Eeg. 46328 (July 12, 2002).
DECISION
The parties argued various legal theories and defenses for the purpose of resolving the instant case, ranging from a deprivation of equal protection to an imposition of an ex post facto law to preclusion by means of the doctrine of laches. Consequently, the Court expended a significant amount of time conducting the relevant research and analysis of these and other issues, but rests its decision on a decidedly more elemental finding. The plaintiff lacks standing to maintain the instant suit.
The Court conducts a basic inquiry in each pending action, beginning first with a determination of personal and subject matter jurisdiction. In the present case, no credible argument can be made against the existence of either of these prerequisites. Next, the Court must determine whether the matter is justiciable, ie., whether the pleadings present a case or controversy. See Constitution of thk Ho Chunk Nation, Art. VII, § 5(a); see also Clarence Pettibone v. HCN Legislature et al., CV 01-84, 2002 WL 34432649, 4 Am. Tribal Law 330 (HCN Tr. Ct., May 15, 2002) at 8-26; Maureen Arnett et al. v. HCN Dep’t of Admin, et al., CV 00-60, -65 (HCN Tr. Ct., Jan. 8, 2000) at 11-12. Within the concept of justiciability lies the doctrine of standing. A plaintiff may properly assert standing by “ ‘ “showing] that hef/she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,” and that the injury “fairly can be traced to the challenged action” and “is likely to be redressed by a favorable deci-sión!.]” ’ ” Pettibone, CV 01-84 at 10 (quoting Valley Forge Coll. v. Americans United, for Separation of Church & State, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (internal citations omitted)).
The parties trace the injury inflicted either to the legislative decision to amend the HOP manuals or the continuing impact of that decision, but the Court posits that no injury results merely from the temporary suspension of the plaintiffs HOP file. See Pl.’s Br. in Supp. of Pl.’s Mot. for Sunmi. J. (Mar. 22, 2001) at 23-25; Answer (Nov. 21, 2000) at 3-4. The plaintiff’s injury must be “concrete and particularized” and “‘actual or imminent, not “conjectural” or “hypothetical.” ’ ” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted). While the plaintiff does lose annual priority points, those tribal members ahead of him prior to the suspension would have appar- *369 entiy remained ahead of him absent the suspension. Therefore, as of May 2000, the plaintiff would not have likely x-eeeived refinancing assistance for a “few years.” Proposed Stipulated Facts, Ex. D. This approximate time frame undoubtedly increased as a result of the severe 2001-02 fiscal year budget cuts. The defendant speculates that the plaintiff would not have garnered refinancing approval even “within the next five to seven years” since roughly fifty-three (53) tribal members ranked ahead of the plaintiff assuming an active HOP file. Br. in Supp. of Def. ⅛ Mot. to Dismiss (Mar. 23, 2001) at 8-9; Answer (Nov. 21, 2000) at 4.
The plaintiff did not attempt to contradict the latter assertion made by the defendant in its responsive pleading. Instead, the plaintiff seemingly stipulated to the accurateness of the statements in Steven S. Davis’ May 11, 2000 correspondence, or at least failed to deny the same. The plaintiff could have utilized the discovery period to ascertain what position he would have occupied on the waiting list had the Legislature not adopted HCN Leg. Res. 08-18-98B. The plaintiff also could have approximated when he would have received refinancing assistance under the same circumstances. The plaintiff, however, has not alleged with any degree of specificity the expected time frame for the threatened injury, and the Court requires a showing of imminent harm. In other words, the plaintiff must reasonably identify the point at which the plaintiffs benefit would have vested, but due to the resolution, an individual with an otherwise subordinate claim received refinancing.
The plaintiffs inclusion on the HOP waiting list is not an assurance of refinancing assistance, and his temporary removal from the list unsurprisingly does not evidence a legally cognizable injury. The Court does not intend to intimate that the plaintiff may not suffer an injury at some point in the future, but the timing of its occurrence remains unintelligible at present. The Court accordingly retrains from discussing the merits of the instant case, and likewise refrains from defining exactly when a threatened injury will support a finding of standing. The Court shall await a case where the plaintiff at least makes the argument.
Concerning the defense based on the Ho-Chunk Nation Statute of Limitations, “[a] limitations period does not begin to run until the plaintiff has a ‘complete and present cause of action.’” Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 195, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941)). The ruling today clearly reveals the inappropriateness of such a defense at this stage. A plaintiff must of necessity be capable of proving injury prior to the running of any statutory period.
Ultimately, the Court declines to render a constitutional decision on the basis of a harm that may not materialize for several years, if ever. Courts cannot entertain causes of action that exist only in the hypothetical. Unforeseeable circumstances could entirely prevent the infliction of any future injury. “To permit a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would ... open the Judiciary to an arguable charge of providing ‘government by injunction.’ ” Schlesinger v. Reservists to Stop the War, 418 U.S. 208, 222, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Therefore, based upon the plaintiffs lack of standing, the Court grants summary judgment in favor of the defendant.
The parties retain the right to file a timely post judgment motion with this *370 Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[a]ny final Judgment or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court,[9] The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure [hereinafter HCN R.App. specifically [HCN R.App. /’. ], Rule 7, Right of Appeal.” HCN R. Civ. P. 61. The appellant ‘‘shall within thirty (30) calendar days after the day such judgment or order was rendered, file with the [Supreme Court] Clerk of Court, a Notice of Appeal from such judgment or order, together with a filing fee of thirty-five dollars ($35 U.S.).” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.App. P. 1.” HCN R. Civ. P. 61.
IT IS SO ORDERED this 31st day of December 2002, by the Ho-Chunk Nation Trial Court located in Black River Falls, WI within the sovereign lands of the Ho-Chunk Nation.

. The Ho-Chuuk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.) permit the Court to serve the Complaint upon the DOJ when the plaintiif/petitioner names as a party either a unit of government or enterprise or an official or employee being sued in their official or individual capacity. HCN R. Civ. P. 27(B).

. The Court denied the defendant’s motion on the grounds that the Court specifically granted the plaintiff the ability to amend his pleading by a date certain as indicated in the Scheduling Order. See Motion Hearing (Log of Proceedings Electronically Recorded at 1, Apr. H, 2001, 01:50:06 CDT).

. I'he Court recognizes that over eighteen (18) months have elapsed since the parties’ last filings. During this timeframe, the Court experienced great uncertainty concerning the retention of judicial officers, resulting in dramatic shifts in workload. In addition, certain factors in the instant case, as discussed below, contributed to the prolonged decision-making process.

.The Court shall reproduce the material portions of these documents in the below Findings o f Fact.

. The Court shall reproduce the material portions of this document in. the below Findings of Fact.

. The parties' description of HCN LEG. RES. 08-18-98B adequately conveys the informa *367 tion relevant to this decision.

. The Court shall reproduce the material portions of this document in the below Findings of Fact.

. The Home Ownership Program budget for non-elder assistance suffered a decrease of 70% from fiscal year 2000/01 to 2001/02, a difference of $4,082,452.00. See 2001/2002 Annual Report at If (distributed at the Nov. 16, 2002 Annual Gen. Council).

. The Supreme Court earlier emphasized that it "is not bound by the federal or state laws as to standards of review.” Louella A. Kelty v. Jonette Pettibone et al., SU 99-02 (HCN S.Ct., Sept. 24, 1999) at 2. The Supreme Court, therefore, has voluntarily adopted an abuse of discretion standard "to determine if an error of law was made by the lower court." Daniel Youngthunder, Sr. v. Jonette Pettibone et al., SU 00-05 (HCN S.Ct., July 28, 2000) at 2; see also Coalition for a Fair Gov’t II v. Chloris A. Lowe. Jr. et al., SU 96-02 (HCN S.Ct., July 1, 1996) at 7-8; and JoAnn Jones v. HCN Election Bd. el al., CV 95-05 (HCN S.Ct., Aug. 15, 1995) at 3. The Supreme Court accepted the following definition of abuse of discretion; "any unreasonable, unconscionable and arbitrary action taken without proper consideration otfacts and law pertaining to the matter submitted,” Yonngthimder, Sr,, SU 00-05 at 2 (quoting Bi.ack’s Law Du iionary 11) (6th ed.1990): Regarding findings of tact, the Supreme Court has required an appellant to "demonstraler ] clear error with respect, to the factual findings of the trial court.” Coalition II, SU 96-02 at 8; but see Anna Rae Funmaker v. Kathryn Doornbos, SU 96-12 (HCN S.Ct., Mar. 25, 1997) at 1-2.